**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| IN RE: § <br> § <br> CTCHGC, LLC, d/b/a Central Texas Gun § <br> Works, Centex Guns, and CTGW,[1] § <br> § <br> MICHAEL D. CARGILL, § <br> § <br> DEBTORS. § <br> § <br> § | LEAD CASE NO. 24-11072-smr <br><br> SECOND CASE NO. 24-11073-smr <br><br> CHAPTER 11 <br> (SUBCHAPTER V) <br> Jointly Administered <br> Under Case No. 24-11072-smr |

**DEBTORS' MOTION FOR AUTHORITY TO PAY PRE-PETITION**
**WAGES AND RELATED PAYROLL TAXES AND CRITICAL CONTRACT**
**LABOR PRE-PETITION PAYMENTS**

COME NOW the above-captioned Debtors ("Applicants" or the "Debtors") and, pursuant to 11 U.S.C. §§ 105(a), 363, 507(a)(4), 507(a)(5), and 541(d), request authorization to pay pre-petition wages and related employer payroll taxes of current employees and critical contract labor pre-petition payments (the "Motion"). In support of the Motion, the Debtors respectfully state and represent as follows:

**JURISDICTION AND VENUE**

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157. This matter concerns the administration of this bankruptcy estate; accordingly, this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O). Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. The predicates for the relief requested herein are 11 U.S.C. §§

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are CTCHGC, LLC d/b/a Central Texas Gun Works, Centex Guns, and CTGW (2344) and Michael D. Cargill (0321). The Debtors' mailing address is 321 W Ben White Blvd #203, Austin, TX 78704.

105(a), 363, 507(a)(4), 507(a)(5), and 541(d) and rule 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## II.     FACTUAL BACKGROUND

2.     On September 2, 2024, (the "Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11, Subchapter V of the Bankruptcy Code. The Debtors' bankruptcy cases are collectively referred to as the "Chapter 11 Cases." The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. A Subchapter V Trustee will be or has been appointed. As of the date of this Motion, no request for another trustee or examiner has been made, and no committee of unsecured creditors has been appointed or designated.

3.     CTCHGC is a company that owns and operates Central Texas Gun Works, a licensed storefront and online firearm retailer. CTCHGC also provides handgun and various gun safety classes, including Identogo fingerprint services. Cargill, as plaintiff, was successful in challenging the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) rule which ordered owners of bump stocks to destroy or surrender them to ATF to avoid criminal charges and prosecution. In June of 2024, the United States Supreme Court upheld the Fifth Circuit's en banc opinion that the ATF had exceeded its statutory authority in classifying a bump stock as a "machine gun" and declared the ATF rule unconstitutionally ambiguous. *See Garland v. Cargill*, 602 U.S. 406 (2024).

4.     Cargill is the sole member and manager of CTCHGC and has personally guaranteed many of CTCHGC's obligations to creditors. Prior to the Petition Date, Prosperity Bank obtained a judgment against Cargill and CTCHGC in the amount of $236,445.99, plus additional pre-judgment interest, and attorneys' fees in the amount of $9,661.20, plus additional attorneys' fees in the event of an appeal, plus post-judgment interest. The judgment is currently on appeal at the

Texas Third Court of Appeals. The Bankruptcy Cases were filed to allow the Debtors to restructure its debts, including a payment plan for the Prosperity Bank judgment.

5. As of the Petition Date and the date of the filing of this Motion, CTCHGC employs 11 employees. Additionally, the CTCHGC contracts with two individuals as contractors, who are paid via 1099.

6. The CTCHGC pays its employees every two weeks.

7. As reflected on the attached <u>Exhibit A</u>, CTCHGC owes $7,787.47 in pre-petition wages to its current employees. Additionally, CTCHGC's employer taxes for such wages is in the amount of $1,164.38. The payments are in arrears, meaning that as of the Petition Date of September 2, 2024, these amounts were due to be paid ("Unpaid Wages"). The two contractors, identified on Exhibit A, are owed $300.00 and $406.80, respectively, for a total of $706.80.

8. No current employee is owed more than $15,150.00 in aggregate for wages, PTO, Sick Leave, or Benefits Program (together, the "Compensation") earned within 180 days before the date of the filing of the petition.

9. In total, CTCHGC seeks authorization to pay the following:

| | | |
|---|---|---|
| a. | Unpaid Wages: | $7,787.47 |
| b. | Payroll taxes for the Unpaid Wages: | $1,164.38 |
| c. | 1099 Payments: | $706.80 |

### III.     RELIEF REQUESTED

10. By this Motion, CTCHGC seeks entry of an Order under sections 105(a), 363, 507(a)(4), 507(a)(5), and 541(d) of the Bankruptcy Code authorizing it, in accordance with stated policies (as modified from time to time), to pay the above identified pre-petition obligations to its current employees (the "Employees") and to the two contractors as "critical vendors." These pre-

petition obligations include (a) amounts owed for wages, salaries, and taxes attributable thereto. Collectively, these items will be referred to as "Pre-Petition Compensation."

## IV. BASIS FOR REQUESTED RELIEF

11. CTCHGC believes that all of the amounts owed to employees covered by this Motion are entitled to priority-claim status under sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code. Section 507(a)(4) of the Bankruptcy Code grants employees priority claims for:

> . . . allowed unsecured claims, but only to the extent of $15,150 for each individual or corporation, as the case may be, earned within 180 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first, for— wages, salaries, or commissions, including vacation, severance, and sick leave pay earned by an individual; or sales commissions earned by an individual or by a corporation with only 1 employee, acting as an independent contractor in the sale of goods or services for the debtor in the ordinary course of the debtor's business if, and only if, during the 12 months preceding that date, at least 75 percent of the amount that the individual or corporation earned by acting as an independent contractor in the sale of goods or services was earned from the debtor.

11 U.S.C. § 507(a)(4).

12. Likewise, under section 507(a)(5) of the Bankruptcy Code, employees are granted a priority claim under the following circumstance(s):

> . . . allowed unsecured claims for contributions to an employee benefit plan (a) arising from services rendered within 180 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first; but only (b) for each such plan, to the extent of — (i) the number of employees covered by each such plan multiplied by $15,150; less (ii) the aggregate amount paid to such employees under paragraph (4) of this subsection, plus the aggregate amount paid by the estate on behalf of such employees to any other employee benefit plan.

11 U.S.C. § 507(a)(5).

13. Finally, to the extent funds for taxes are held in trust by CTCHGC, those funds are not property of the bankruptcy estate under section 541(d) of the Bankruptcy Code, which excludes "property in which the debtor holds, as of the commencement of the case, only legal title and not

an equitable interest." It is well established under section 541(d) of the Bankruptcy Code that taxes collected on behalf of taxing authorities are not property of the estate. Here, amounts withheld and deducted from employee's checks (as noted above) are funds held in trust by CTCHGC for the benefit of another.

14. As such, these claims would be entitled to payment in full under any chapter 11 plan.

15. Authorizing CTCHGC to make these payments at this time will affect only the timing of such payments. To the extent that such claims are not entitled to priority-claim status in the case of the two 1099 contractors, their payment is justified under the "doctrine of necessity."

16. Courts have used section 105(a) of the Bankruptcy Code, which codifies the equitable powers of bankruptcy courts to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]," to authorize the post-petition payment of contractor claims like those noted herein to preserve CTCHGC's going-concern value.[2]

17. The bankruptcy court's exercise of its authority under the "doctrine of necessity" is appropriate to carry out specific provisions of chapter 11—sections 1107(a), 1108 and 363(b)(l) of the Bankruptcy Code—that authorize a debtor in possession to maintain and to operate CTCHGC's business and use estate property outside of the ordinary course of business. Indeed, a

---

[2] *See Miltenberger v. Logansport, Crawfordsville and Southwestern Ry. Co.*, 106 U.S. 286, 311 (1882) (holding that "[m]any circumstances may exist which may make it necessary and indispensable to . . . the preservation of the property, for the receiver to pay pre-existing debts of certain classes out of the earnings of the receivership); *see also Mich. Bureau of Workers' Disability Comp. v. Chateaugay (In re Chateaugay Corp.)*, 80 B.R. 279, 285-87 (S.D.N.Y. 1987) (finding that a court's equitable powers include authorizing a debtor to pay prepetition debts). As such, a bankruptcy court's use of its equitable powers to "authorize the payment of pre-petition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept." *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (citing *Miltenberger*, 106 U.S. at 311).

debtor in possession operating a business under section 1108 of the Bankruptcy Code has a duty to protect and to preserve the going-concern value of an operating business, and pre-petition claims may be paid if necessary to perform the debtor's duty.[3]

18. A bankruptcy court's exercise of its authority under section 105(a) of the Bankruptcy Code is also appropriate to carry out two central policies underlying Chapter 11: (a) to permit the successful rehabilitation of the debtor and (b) to preserve going concern value and maximize property available to satisfy all creditors. Numerous courts have used their section 105(a) equitable powers under the "necessity of payment" doctrine to authorize payment of a debtor's prepetition obligations where, as here, such payment is necessary to effectuate the "paramount purpose" of chapter 11 reorganization, which is to prevent the debtor from going into liquidation and to preserve the debtor's potential for rehabilitation.

19. This doctrine also has been invoked if nonpayment of a prepetition contractual obligation would trigger a withholding of services essential to the debtor's business reorganization plan. The Court in *In re CoServ*, LLC, 273 B.R. 487 (Bankr. N.D. Tex. 2002) found that payment of "critical vendors" can be authorized under section 105 of the Bankruptcy Code when (i) it is critical that the debtor deal with the claimant, (ii) if the debtor doesn't deal with the claimant, the debtor risks harm that is disproportionate to the amount of the claimant's prepetition claim, and (iii) there is no practical or legal alternative by which the debtor can deal with the claimant other than by payment of the claim. Id. at 498. For the reasons set forth above, the Debtor submits that the three factor *CoServ* test is satisfied in this case as to the contractor claims. Mr. Istre is owed $300 for contract services. He is an instructor at the gun range. He has specific training and

---

[3] *See In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002) ("There are occasions when this duty can only be fulfilled by the preplan satisfaction of a prepetition claim.").

certification to perform those contract services. Replacing Mr. Istre would be invasive and time consuming and would certainly outweigh the $300 he is owed. Rey Perez III works as a contract sales clerk on Saturdays and Sundays at CTCHGC's retail store. Mr. Perez is a licensed private investigator and he has specialized training and credentials in this capacity. Additionally, CTCHGC provides specific training for its sales clerks and it would be time consuming to replace Mr. Perez if a suitable replacement could be found. This would outweigh the $406.80 he is owed.

20. CTCHGC has sufficient cash reserves to pay the Unpaid Wages and the contractor claims. In the event any of the employees or contractors cease working for CTCHGC at the time of payment, the forgoing payments to any such departing employee or contractor shall not be authorized. In the event that any of the employees or contractors have been pre-paid pursuant to prior order of the Court any amount for which they will not perform as an employee or contractor, such pre-paid, unearned amounts may be deducted from any payment authorized under this Motion.

21. The relief sought herein is essential to the success of CTCHGC's chapter 11 case. Here, to achieve success, it is critical that the employees and contractors be paid without interruption so long as they remain employed and that CTCHGC continues to honor its existing practices and policies for the pecuniary benefit of the employees and contractors. Such payments are necessary to prevent irreparable harm to the morale of the employees and contractors at the very time when its dedication, confidence, and cooperation are vital to this case.

### V. PRAYER

BASED UPON THE FOREGOING, CTCHGC requests that this Court enter an Order: 1) authorizing CTCHGC to pay the Unpaid Wages and payments to contractors, so long as they remain employed and performing as contracted; and 2) awarding CTCHGC such other and further relief that this Court deems just and proper.

Dated: September 6, 2024                    Respectfully submitted,

                                                KELL C. MERCER, P.C.
901 S MoPac Expy, Bldg 1, Suite 300
Austin, Texas 78746
(512) 627-3512
(512) 597-0767 (fax)
kell.mercer@mercer-law-pc.com

By: /s/ Kell C. Mercer
Kell C. Mercer
Texas State Bar No. 24007668

PROPOSED COUNSEL FOR CTCHGC, LLC
AND MICHAEL D. CARGILL, DEBTORS

## CERTIFICATE OF SERVICE

    I certify that on September 6, 2024, a true and correct copy of this document was served via this Court's ECF notification system or United States first-class mail to (a) the Office of the United States Trustee for the Western District of Texas (b) the holders of the twenty (20) largest unsecured claims against the Debtors on an aggregate basis; and (c) those parties requesting notice pursuant to Bankruptcy Rule 2002, as listed on the attached list.

                                                */s/ Kell C. Mercer*
                                                Kell C. Mercer

| Employees (11) | Payment type | Gross pay | Deductions | Reimbursements | Employee taxes | Employee benefits | Payment |
|---|---|---|---|---|---|---|---|
| Caballero, Armando (Ace) | Check | $1,181.48 | $0.00 | $0.00 | $90.38 | $0.00 | $1,091.10 |
| Chapa, Bernardo (Bernard) | Check | $1,500.00 | $0.00 | $0.00 | $238.29 | $0.00 | $1,261.71 |
| Diaz, Michael | Check | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Garcia, Benjamin (Ben) | Check | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Gutierrez, Santana | Check | $1,287.54 | $0.00 | $0.00 | $224.85 | $0.00 | $1,062.69 |
| Payne, Percy | Check | $1,072.21 | $0.00 | $0.00 | $134.35 | $0.00 | $937.86 |
| Petersen, Lawrence (Tom) | Check | $1,404.98 | $0.00 | $0.00 | $199.77 | $0.00 | $1,205.21 |
| Powell, Richard (Trey) | Check | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Regalado, Jesus | Check | $1,303.05 | $0.00 | $0.00 | $179.74 | $0.00 | $1,123.31 |
| Riggs, Drew | Check | $522.59 | $0.00 | $0.00 | $39.98 | $0.00 | $482.61 |
| Vinson, Connor (Reid) | Check | $680.00 | $0.00 | $0.00 | $57.02 | $0.00 | $622.98 |
| Totals | | $8,951.85 | $0.00 | $0.00 | $1,164.38 | $0.00 | $7,787.47 |

≡ **gusto** 🔍 Michael Car... Admin · Cen...

# Pay contractors

1. Enter payments     2. Review and submit     3. Confirmation

## Review and submit

Submit payments by 4PM PT on Fri Sep 6 to pay your contractors on time.

| Total amount | Bank account | Withdrawal date | Pay date |
|---|---|---|---|
| $0.00 | CAPITOL CREDIT UNION 6204 | Fri Sep 6, 2024 | Fri Sep 6, 2024 |

### What your company pays

| Name | Payment type | Invoice | Hours | Wages | Reimbursements | Bonus | Total amount |
|---|---|---|---|---|---|---|---|
| Istre, Zachary | Check | | | $300.00 | | | $300.00 |
| Perez III, Rey | Check | | 22.6 | $406.80 | | | $406.80 |

Total Amount: **$706.80**

[ Back ]  [ Submit payments ]